IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TRAVIS HARTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-CV-3132 |
| | ) | |
| CRAIG FOSTER and | ) | |
| KURT SIMON, | ) | |
| | ) | |
| Defendant, | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff, proceeding pro se, is currently detained in Jacksonville Correctional Center.  He asserts that, during his detention in the Montgomery County Jail from January 30 to March 16, 2010, Defendants refused to provide him with anxiety medicine which had been prescribed to Plaintiff before his arrest.  In particular, Plaintiff had been prescribed and was taking 10 milligrams of Lexapro daily and .5 milligrams of Ativan twice daily.

Defendants have moved for summary judgment, and the Court has read the parties' submissions.  In the Court's opinion, Defendants' motions must be denied because the record is silent on material facts.

1

Construing reasonable inferences in Plaintiff's favor, as the Court must on summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), Defendant Captain Foster confirmed on February 17, 2013 that Plaintiff had been prescribed Lexapro and Ativan before Plaintiff's arrest.  The record allows an inference that Plaintiff several times informed Captain Foster and Dr. Raymond, who is not a Defendant, of Plaintiff's need for his prescriptions to alleviate his anxiety, which included panic attacks. Plaintiff offered to pay for the medications himself.  On this record, Plaintiff's prescriptions and his own description of his symptoms allow an inference that he had a serious medical need for treatment of his anxiety during his stay at the Jail.

Defendant Kurt Simon was the Director of the Division of Behavioral Health at the Montgomery County Health Department. On February 26, 2010, Simon saw Plaintiff pursuant to a request from Captain Foster.  Simon asserts that the visit was primarily to determine whether Plaintiff was a danger to himself or others. However, construing inferences in Plaintiff's favor, at least one of the purposes of the visit was to evaluate Plaintiff's need for Ativan and Lexapro.  Simon contends that Plaintiff did not mention his

need for Ativan or Lexapro at the February 26th evaluation, but Plaintiff testified otherwise in his deposition.

Defendant Simon is a mental health professional, but he is not a psychiatrist and cannot prescribe psychotropic medicines. However, after meeting with Plaintiff, Simon wrote a note which concluded, "[t]his request will be denied." Simon gave the note to Captain Foster, and Plaintiff did not receive his medicine. (2/26/10 note by Kurt Simon, d/e 44-2, p. 24.) Simon's note gives rise to an inference that Simon had the power to recommend whether Plaintiff needed the Ativan and Lexapro, even if Simon did not have the power to write the prescriptions himself. In the absence of evidence to the contrary, an inference also arises that Simon's recommendation was a necessary step for Plaintiff to obtain his medications.

According to Plaintiff, Captain Foster told Plaintiff that some medicines were banned at the Jail, but whether Ativan and Lexapro were on the banned list is not in the record. Captain Foster does not explain what procedure Plaintiff needed to follow to obtain approval for the prescriptions. Foster also does not explain what control he had over whether Plaintiff received his prescriptions.

3

As discussed above, an inference arises that Plaintiff had a serious need for treatment for his anxiety.  However, not enough facts are in the record to determine whether a rational juror could find that Kurt Simon or Captain Foster were deliberately indifferent to that need.  Though Plaintiff did not receive Ativan or Lexapro at the Jail, he was prescribed, at least for part of his stay, a different medicine sometimes used to treat anxiety:  Vistaril.  Plaintiff admits that the Vistaril helped to reduce his panic attacks, though he continued to experience anxiety and shortness of breath.  When Plaintiff transferred to the IDOC in March of 2010 he was prescribed Flexeril, a muscle relaxant, not Ativan or Lexapro, further evidence that Ativan and Lexapro were not the only effective methods for treating Plaintiff's anxiety.

However, no evidence in the record explains how Vistaril compares with Lexapro and Ativan for purposes of treating anxiety like Plaintiff's.  Whether Kurt Simon has the education and training to give that explanation is unclear, and, in any event, Simon did not prescribe the Lexapro.  No affidavit from any medical professional who treated Plaintiff is in the record.  Without this information the

4

Court cannot tell if prescribing Vistaril instead of Ativan and Lexapro was a medically acceptable approach in Plaintiff's case.

Additionally, whether Simon or Captain Foster had any control over the medicines given to Plaintiff is unclear. Dr. Raymond or the nurses may have had the sole authority to determine whether Plaintiff should be prescribed Ativan and Lexapro. If so, then Kurt Simon and Captain Foster were likely entitled to rely on the treatment decisions of the medical professionals. Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005)("If a prisoner is under the care of medical experts… a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.")(quoted cite omitted). Dr. Raymond is not a defendant, nor is his affidavit in the record.

In short, the Court does not have enough information to determine whether a trial is necessary. Summary judgment will be denied, and the parties will be given another opportunity to file dispositive motions.

On a separate matter, Defendants argue that Plaintiff did not exhaust his administrative remedies. However, Plaintiff filed an "inmate request and grievance form" on February 24, 2010, asking

for his medication and recounting his attempts to obtain that medication. (2/24/10 inmate grievance form, d/e 51, p. 8.) Plaintiff filled out another "inmate request and grievance form" on March 2, 2010 about the same issue. Defendants do not explain what further steps were available to Plaintiff regarding his administrative remedies.

Defendants also assert qualified immunity, but a more developed record is necessary to make that determination.

IT IS THEREFORE ORDERED:

1. Defendants' motions for summary judgment are denied (d/e's 44, 45).

2. The parties may file additional dispositive motions by March 15, 2013.

3. The final pretrial conference is rescheduled to August 26, 2013 at 1:30 p.m.. Plaintiff shall appear by video conference. Defense counsel shall appear in person. The parties are directed to submit an agreed, proposed final pretrial order at least seven days before the final pretrial conference. Defendant bears the responsibility of preparing the proposed final pretrial order and mailing the proposed

6

    order to Plaintiff to allow Plaintiff sufficient time to review the order before the final pretrial conference.  See CD-IL Local Rule 16.3.

4. The clerk is directed to issue a video writ to secure Plaintiff's appearance at the final pretrial conference.

5. The proposed final pretrial order must include the names of all witnesses to be called at the trial and must indicate whether the witness will appear in person or by video conference.  Nonparty witnesses who are incarcerated will testify by video.  Other nonparty witnesses may appear by video at the Court's discretion.  The proposed pretrial order must also include the names and addresses of any witnesses for whom trial subpoenas are sought.  The parties are responsible for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees.  Fed. R. Civ. P. 45.

6. The exhibit section of the proposed final pretrial order must list by number all the exhibits a party may seek to introduce at the trial and give a short description of the exhibit. (For example, "Plaintiff's Ex. 1: 11/10/12 health

care request"). The parties must prepare their own exhibits for introduction at the trial, marking the exhibits with the same number that is on the list submitted to the Court. Exhibits that are introduced at trial will be kept in the Court record. Therefore, the party offering the exhibit is responsible for making a copy of the exhibit to keep for the party's own records. Additionally, the parties are directed to exchange copies of their marked exhibits at least ten days before the final pretrial conference. If a party intends to object to the introduction of a proposed exhibit, that party must provide the Court a copy of the exhibit and an explanation of the grounds for objection at least five business days before the final pretrial conference. Objections will be argued orally at the final pretrial conference.

7. The Court will circulate proposed jury instructions, a statement of the case, and proposed voir dire questions prior to the final pretrial conference, for discussion at the final pretrial conference. Proposed additional/alternate instructions and voir dire questions must be filed five

business days before the final pretrial conference. The jury instructions, statement of the case, and voir dire questions will be finalized at the final pretrial conference, to the extent possible.

8. The parties must prepare their own exhibits for introduction at the trial, marking the exhibits with the same number that is on that party's exhibit list in the final pretrial order. Exhibits that are introduced at trial will be kept in the Court record. The party offering the exhibit is responsible for making a copy of the exhibit to keep for the party's own records. Additionally, the parties are directed to exchange copies of their marked exhibits at least ten days before the final pretrial conference. If a party intends to object to the introduction of a proposed exhibit, that party must provide the Court a copy of the exhibit and an explanation of the grounds for objection at least five business days before the final pretrial conference. Objections will be argued orally at the final pretrial conference.

9. Motions in limine are to be filed at least five business days before the final pretrial conference, to be argued orally at the final pretrial conference.

10. The date for the jury selection and the jury trial will be determined at the final pretrial conference. In light of the Court's busy trial calendar, the parties are reminded that they may consent to a trial before Magistrate Judge Cudmore. 28 U.S.C. § 636(c)(1)(parties may consent to full time Magistrate Judge conducting "any or all proceedings in a jury or nonjury civil matter). Consent is completely voluntary: the parties are "free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(3).

11. After the final pretrial order is entered and the trial date is set, the Clerk is directed to issue the appropriate process to secure the personal appearance of Plaintiff at the trial and the video appearances of the video witnesses at the trial.

ENTER: February 4, 2013

FOR THE COURT:

                            **s/Sue E. Myerscough**
                            SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE